**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
MARTINSBURG**

**WILLIAM STRASBURG,**

　　　　　Plaintiff,

**v.**　　　　　　　　　　　　　　　　　　**CIVIL ACTION NO. 3:22-cv-126
(GROH)**

**MINERAL COUNTY MAGISTRATE'S OFFICE,
CHARLES R. GULBRONSON,
AUGUSTA WV REGIONAL JAIL,
TROOPER HARTMAN,
TROOPER TRENTON,
TROOPER KERNS,
WEST VIRGINIA STATE POLICE,**

　　　　　Defendants.

## REPORT AND RECOMMENDATION

### I.　　INTRODUCTION

　　　Pending before the Court is pro se Plaintiff William Strasburg's Motion [ECF No. 2] for Leave to Proceed In Forma Pauperis.[1] Because Plaintiff seeks to proceed *in forma pauperis*, the undersigned must conduct a preliminary review to determine whether Plaintiff's Complaint [ECF No. 1] sets forth any viable claims. See 28 U.S.C. § 1915(e)(2)(B). Also pending before the Court is Plaintiff's Motion [ECF No. 3] for Injunction, Motions [ECF Nos. 4, 10] for Removal to Federal Court, Motion [ECF No. 5] for a Cease-and-Desist Order, and Emergency Request for Injunction [ECF No. 8]. The undersigned concludes that removal is improper and that Plaintiff's Complaint fails to state a claim upon which relief can be granted and seeks monetary relief against

---

[1] On July 27, 2022, this Court, by the Honorable Gina M. Groh, United States District Judge, entered an Order of Referral [ECF No. 7], referring this matter to the undersigned United States Magistrate Judge.

defendants who are immune from such relief. Accordingly, the undersigned **RECOMMENDS** that Plaintiff's Complaint [ECF No. 1] be **DISMISSED WITHOUT PREJUDICE** and **RECOMMENDS** that Plaintiff's related Motions [ECF Nos. 2, 3, 4, 5, 8, 10] be **DENIED**. Lastly, the undersigned **RECOMMENDS** that the state criminal matter of <u>State v. William Joseph Strasburg</u>, No. 22-M29M-390, be **REMANDED** to the Magistrate Court of Mineral County, West Virginia, and that the state criminal matter of <u>State v. William Joseph Strasburg</u>, No. 22-M12M-645, be **REMANDED** to the Magistrate Court of Grant County, West Virginia.

## II.    THE COMPLAINT

On July 25, 2022, Plaintiff filed a Complaint against Defendants Mineral County Magistrate's Office,[2] Charles R. Gulbronson, Augusta WV Regional Jail,[3] Trooper Hartman, Trooper Trenton, Trooper Kerns, and the West Virginia State Police. ECF No. 1. Liberally construed, Plaintiff seeks to bring the following causes of action against Defendants in his Complaint: intimidation of a federal witness in violation of 18 U.S.C. § 1512, conspiracy to commit color of law violations under 18 U.S.C. §§ 241 and 242, torts of outrage, trespass, prosecutorial misconduct, obstruction of justice, contempt of court, <u>Bivens</u> violations, and what appears to be several claims arising under 42 U.S.C. § 1983, including false arrest, false imprisonment, malicious prosecution, and constitutional violations of the First, Fourth, Fifth, and Fourteenth Amendments. It is unclear which claims Plaintiff seeks to bring against each

---

[2] It appears to the Court that Plaintiff meant to bring suit against the Mineral County Magistrate Court. The Court will thus refer to the "Mineral County Magistrate's Office" as the Mineral County Magistrate Court.
[3] It appears to the Court that Plaintiff meant to bring suit against the Potomac Highlands Regional Jail, located in Augusta, West Virginia. The Court will thus refer to the "Augusta WV Regional Jail" as the Potomac Highlands Regional Jail.

Defendant. Id. For these claims, Plaintiff requests damages in the aggregate amount of $30,085,000. Id. at 8.

In support of his Complaint, Plaintiff asserts that in early May of 2022, he witnessed a motorist operating a motor vehicle in a "reckless and negligent manner." ECF No. 1 at 2. Plaintiff then got into a traffic dispute and altercation with this motorist. Id. Defendant Trooper Kerns pulled over the Plaintiff, and Plaintiff described the incident to Defendant Kerns and filled out some paperwork. Id. On May 14, 2022, Plaintiff was charged in Mineral County with three criminal misdemeanors arising from the prior traffic altercation with the motorist: Destruction of Property, Assault, and Unlawful Stopping. ECF No. 1 at 2; ECF No. 1-4 at 2. Kerns then arrested Plaintiff and brought him to Mineral County Magistrate Court. ECF No. 1 at 2. Afterwards, Plaintiff was released on bond. ECF No. 1-4 at 4. Plaintiff then informed Kerns and Magistrate Charles Gulbronson of his intent to remove this criminal case to federal court. ECF No. 1 at 2.

On June 15, 2022, an arrest warrant was issued against Plaintiff for failure to appear in Mineral County Magistrate Court.[4] Id. at 3. On July 1, 2022, Defendants Hartman and Trenton arrived at the Plaintiff's home to execute the arrest warrant, placed Plaintiff under arrest and drove him to the Potomac Highlands Regional Jail, where he spent the next six days. Id. at 3-4, 6. Plaintiff also met with a magistrate from Grant County after his arrest on July 1, 2022. Id. at 5. Plaintiff alleges that the Mineral County Magistrate Court "maliciously left Plaintiff in jail for several days to effect a punishment without due process." Id. Plaintiff asserts challenges to his conditions of

---

[4] It is unclear to the Court when Plaintiff was required to appear following his initial arrest and appearance on May 14, 2022.

confinement at the Potomac Highlands Regional Jail, which he contends amount to Bivens violations. Id. at 6. On July 6, 2022, Plaintiff was released from jail on a $5,000 cash bond with his bench trial set for July 29, 2022, in Mineral County Magistrate Court. ECF No. 1 at 6-7; ECF No. 1-4 at 1. Plaintiff failed to appear on July 29, 2022, for his criminal trial, and a resulting arrest warrant was issued. See ECF No. 8. Since then, Plaintiff may have absconded, stating in a later filing that he has left the State to protect himself. Id.

In addition to his Complaint,[5] Plaintiff also filed several related motions that reiterate the same facts and legal conclusions presented in the Complaint. Plaintiff's Motions [ECF Nos. 4, 10] for Removal to Federal Court appear to be, foremost, an effort to remove two different State prosecutions in Mineral and Grant County, inappropriately, to federal court. Further, he seeks to use these motions as a vehicle to articulate, prematurely, federal civil claims related to these state proceedings. Additionally, Plaintiff filed a separate pro se Motion [ECF No. 3] asking the Court to issue an order granting injunctive relief. Plaintiff then filed a Motion [ECF No. 5] for a Cease-and-Desist Order, asking the Court for Defendants to cease all contact with Plaintiff, refrain from filing further arrest warrants against him, refrain from prosecuting Plaintiff in state court, and cease any illegal traffic stops. Lastly, Plaintiff filed an

---

[5] The undersigned also notes that Plaintiff's Complaint is riddled with factually frivolous allegations and comments. For example, Plaintiff states: "Maximum duress was inflicted upon the Plaintiff due to the fact that the Independence Day holiday is THE holiday for Libertarian lovers of the Constitution and The American Dream, and to be incarcerated by thugs who violate the Constitution at every chance is like pouring salt over a wound." ECF No. 1 at 5-6. Plaintiff also states the following: "The Plaintiff suggests to this Court that West Virginia is lost. There is no Law here, and there never will be with the foxes guarding the henhouse, such as it is. This place is a cesspool for crime and corruption at the local government level." Id. at 5. "Anecdotally, Grant and Hardy county police and local government officials, as well as countless West Virginia State Troopers, are heavily involved directly in drug trafficking throughout the state of West Virginia." Id.

Emergency Request for Injunction [ECF No. 8], again repeating the same claims that he has removed his criminal case to federal court, rendering all state proceedings invalid. Plaintiff claims that he "requires immediate injunctive relief against the Defendants to keep [him] from being unlawfully arrested and unlawfully incarcerated." ECF No. 8.

### III.   LEGAL STANDARD

When filing a lawsuit in federal court, the plaintiff is required to pay certain filing fees. The court has the authority to allow a case to proceed without the prepayment of fees "by a person who affirms by affidavit that he or she is unable to pay costs . . . ." L.R. Gen. P. 3.01. The plaintiff files this affidavit along with the request or motion for leave to proceed *in forma pauperis*. Id. The Supreme Court of the United States has explained that the purpose of the "federal *in forma pauperis* statute . . . is designed to ensure that indigent litigants have meaningful access to the federal courts." Neitzke v. Williams, 490 U.S. 319, 324 (1989).

When a plaintiff seeks to proceed *in forma pauperis*, the court conducts a preliminary review of the lawsuit before allowing the case to proceed. See 28 U.S.C. § 1915(e). This includes cases filed by non-prisoners. See Michau v. Charleston Cnty., S.C., 434 F.3d 725, 727 (4th Cir. 2006) (holding that the district court did not abuse its discretion when it dismissed the non-prisoner complaints under 28 U.S.C. § 1915(e)(2)(B)). The court must dismiss a case at any time if the court determines that the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief against a defendant who is immune from such relief. See 28 U.S.C. § 1915(e)(2)(B). A case is often dismissed *sua sponte* before the

defendant is notified of the case "so as to spare prospective defendants the inconvenience and expense of answering such complaints." Id. at 324. Furthermore, if a "court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." Fed. R. Civ. P. 12(h)(3); see also Brickwood Contractors, Inc. v. Datanet Eng'g, Inc., 369 F.3d 385, 390 (4th Cir. 2004) (stating that "questions of subject-matter jurisdiction may be raised at any point during the proceedings and may (or, more precisely, must) be raised sua sponte by the court").

When reviewing pro se complaints, the Court must construe them liberally. See Beaudett v. City of Hampton, 775 F.2d 1274, 1278 (4th Cir. 1985). Courts must read pro se allegations in a liberal fashion and hold those pleadings "to less stringent standards than formal pleadings drafted by lawyers." Haines v. Kerner, 404 U.S. 519, 520 (1972). However, "the requirement of liberal construction does not mean that the court can ignore a clear failure . . . to allege facts which set forth a claim currently cognizable" in federal court. Gamache v. F.B.I., 2011 WL 4966281, at *1 (D.S.C. Apr. 19, 2011).

As stated above, 28 U.S.C. § 1915(e)(2)(B)(ii) permits the court to dismiss a complaint that "fails to state a claim on which relief may be granted." To state a claim upon which relief can be granted, the Federal Rules of Civil Procedure "require only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). Although a complaint need not assert "detailed factual allegations," it must contain "more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action." Twombly, 550 U.S. at 555 (citations omitted). To

survive dismissal for failure to state a claim, the complaint must raise a right to relief that is more than speculative. Id. In other words, the complaint must contain enough facts to state a claim for relief that is "plausible" on its face, rather than merely "conceivable." Id. at 570. Therefore, in order for a complaint to survive dismissal for failure to state a claim, the plaintiff must "allege facts sufficient to state all the elements of [his or] her claim." Bass v. E.I. DuPont de Nemours & Co., 324 F.3d 761, 765 (4th Cir. 2003) (citing Dickson v. Microsoft Corp., 309 F.3d 193, 213 (4th Cir. 2002)).

## IV.   DISCUSSION

The Complaint [ECF No. 1] and accompanying theories of relief in the related Motion [ECF No. 3] for Injunction, Motions [ECF Nos. 4, 10] for Removal to Federal Court, Motion [ECF No. 5] for a Cease-and-Desist Order, and Emergency Request for Injunction [ECF No. 8] do not provide sufficient factual allegations for the claims and relief asserted. Nor does Plaintiff set forth in the Complaint and accompanying Motions the necessary legal grounds entitling him to any relief.

### A.   Removal of State Criminal Proceedings

Along with his Complaint, Plaintiff filed a "Motion for Removal to Federal Court" under 28 U.S.C. §§ 1441 and 1443, in which he seeks to remove the state criminal proceeding against him in State v. William Joseph Strasburg, No. 22-M29M-390, from the Mineral County Magistrate Court to the United States District Court. ECF No. 4. Then, on August 15, 2022, Plaintiff filed an additional "Motion for Removal to Federal Court" under 28 U.S.C. §§ 1441 and 1443, in which he attempts to remove a different state criminal proceeding against him in State v. William Joseph Strasburg, No. 22-

M12M-645, from the Grant County Magistrate Court to the United States District Court. ECF No. 10.

As an initial matter, Plaintiff's filings are procedurally improper. Assuming for the sake of argument that Plaintiff's removal motions had merit, which they do not, because these two motions deal with separate state prosecutions in different counties, the proper procedural course of action would be to file separate notices of removal in federal court following the procedural requirements of 28 U.S.C. § 1455. The Court would then decide whether each of Plaintiff's criminal proceedings should proceed in federal court or whether the matters should be remanded back to state magistrate court. See 28 U.S.C. § 1455(b)(4). Upon conclusion of the state criminal matters, the Plaintiff could then file a civil complaint in separate federal court actions addressing federal civil claims related to these allegedly improper criminal proceedings.

But that did not occur here. Instead, Plaintiff has filed one civil action that asserts premature claims related to state criminal prosecutions and filed two motions to remove state criminal prosecutions that do not adhere to the basic procedural requirements of 28 U.S.C. § 1455. While the Plaintiff is pro se, and is given the benefit of some leeway, the undersigned notes that Plaintiff has attempted removal before in other federal district courts unsuccessfully and should be familiar with the required procedural and jurisdictional standards.[6] Nevertheless, for the sake of judicial economy, the

---

[6] See Strasburg v. Maryland, No. 8:20-cv-3335-PWG (D. Md. Nov. 23, 2020) (denying removal motion of state court action related to traffic violations, remanding action to state court, and dismissing complaint to the extent that the Strasburg's filings can be construed as a separate action apart from his traffic tickets); Kentucky v. Strasburg, No. 0:20-CV-140-GFVT, 2020 WL 6937439 (E.D. Ky. Nov. 24, 2020) (denying removal motion of state criminal matter, remanding action to state court, and dismissing case); Virginia v. Strasburg, No. 1:20-cv-923-RDA-JFA (E.D. Va. March 4, 2021) (remanding action to state court because Strasburg failed to comply with the procedural requirements of removal); Strasburg v. Wilson, No. 1:22-cv-1570-SAG (D. Md. August 15, 2022) (denying motion to remove state criminal matter to federal court, remanding action to state court, and dismissing complaint).

undersigned will address the merits of these removal motions as well as the underlying merits of Plaintiff's civil complaint in this report and recommendation.

Plaintiff claims that this Court has original jurisdiction under 28 U.S.C. §§ 1441 and 1443 "on the grounds that existing West Virginia law, statute, and/or commonly accepted police practices" are unconstitutional. ECF Nos. 4, 10. Title 28 U.S.C. § 1441 plainly provides for the removal of <u>civil</u> actions brought in state court, not <u>criminal</u> actions. Thus, § 1441 is inapplicable here. However, 28 U.S.C. § 1443 does permit a defendant in a state criminal proceeding to remove the case to federal court, but only under very limited circumstances. Specifically, § 1443 permits the removal of a state criminal prosecution:

> (1) Against any person who is denied or cannot enforce in the courts of such State a right under any law providing for the equal civil rights of citizens of the United States, or of all persons within the jurisdiction thereof;

> (2) For any act under color of authority derived from any law providing for equal rights, or for refusing to do any act on the ground that it would be inconsistent with such law.

28 U.S.C. § 1443. "If the removing party fails to make a proper showing under § 1443, this Court lacks subject matter jurisdiction to hear the case." <u>Commonwealth of Virginia v. El</u>, 2016 WL 3746376, at *2 (E.D. Va. July 12, 2016). To determine whether Plaintiff's attempted removal is proper, the undersigned will examine the two avenues of removal provided by § 1443.

For a defendant to remove a criminal action in state court under § 1443(1), the removing party must demonstrate that (a) the "'right allegedly denied ... arises under a federal law providing for specific civil rights stated in terms of racial equality'" and (b) "it must appear ... that the removal petitioner 'is denied or cannot enforce' the specified

federal rights" in state court. Johnson v. Mississippi, 421 U.S. 213, 219 (1975) (internal citations omitted).

Here, Plaintiff fails to make a proper showing for the removal of a criminal proceeding under § 1443(1). Namely, this Court lacks jurisdiction over this action pursuant to § 1443(1) because Plaintiff does not allege a violation of any federal right couched in terms of racial equality. Thus, this Court should deny the Motions for Removal, and remand the matter to the Mineral County and Grant County Magistrate Courts unless Plaintiff can make a proper showing under § 1443(2).

Section 1443(2) consists of two distinct clauses: the "color of authority" clause and the "refusal" clause. The "color of authority" clause "confers a privilege of removal only upon 'federal officers and ... persons assisting such officers in the performance of their official duties.'" Folts v. City of Richmond, 480 F.Supp. 621, 626 (E.D.Va.1979) (citing City of Greenwood, Miss. v. Peacock, 384 U.S. 808, 815, 824 (1966)). The second "refusal" clause "is available only to state officers." Peacock, 384 U.S. at 824 n. 22; Pennsylvania v. Brown–Bey, 637 Fed.Appx. 686, 689 (3d Cir. 2016).

This Court does not have jurisdiction over this action pursuant to § 1443(2) because Plaintiff does not allege that he is a federal officer, a person assisting a federal officer in the performance of their official duties, or a state officer. Absent this threshold requirement, a removing party cannot utilize § 1443(2). Thus, the Court cannot establish subject matter jurisdiction over this criminal action through § 1443(2).

Where it "clearly appears on the face of the notice and any exhibits annexed thereto that removal should not be permitted," the district court should summarily remand the action. 28 U.S.C. § 1455(b)(4). As it clearly appears that Plaintiff cannot

remove his pending state criminal matters to this Court, the undersigned RECOMMENDS that Plaintiff's Motions [ECF No. 4, 10] be DENIED and that the criminal proceedings be REMANDED to the Mineral County and Grant County Magistrate Courts.

Lastly, as a basis for his civil claims in the Complaint, Plaintiff asserts that his attempted removal of his criminal cases to federal court makes him a protected federal witness and in turn, means that he does not have to appear in state court for his criminal proceedings. He is incorrect. First, because Plaintiff failed to adhere to the procedural requirements of 28 U.S.C. § 1455, it could be that removal was never pending because the proper steps to initiate removal were not taken. But even if they were, 28 U.S.C. § 1455(b)(3) explicitly states that the "filing of a notice of removal of a criminal prosecution shall not prevent the State court in which such prosecution is pending from proceeding further, except that a judgment of conviction shall not be entered unless the prosecution is first remanded." It does not appear to the Court from the pleadings that a judgment of conviction has been entered in either criminal case. Further, it is the Plaintiff's duty to attend all hearings in state court for the criminal charges lodged against him. To the extent Plaintiff's civil claims are premised on this flawed removal argument, those claims should be dismissed. As for all the other allegations and claims contained in Plaintiff's Complaint, the undersigned will address each in turn.

11

### B.    Defendants Immune from Suit

#### 1.  Judicial Immunity

Defendant Charles R. Gulbronson, a Mineral County Magistrate, is entitled to

absolute judicial immunity in this case. State "[m]agistrates are judicial officers and are

thus entitled to absolute immunity under the same conditions as judges." King v. Myers,

973 F.2d 354, 356 (4th Cir. 1992). State "magistrates are entitled to absolute immunity

for acts performed in their judicial capacity." Pressly v. Gregory, 831 F.2d 514, 517 (4th

Cir.1987); see also Pritchard v. Crouser, 175 W.Va. 310, 313, 332 S.E.2d 611, 614

(1985) (holding that judicial immunity applies to a West Virginia magistrate despite the

fact that magistrate court is not a court of record). Magistrates have absolute immunity

for their judicial acts even when accused of acting maliciously and corruptly. Ziegler v.

Rider, 2020 WL 3272215, at *8 (S.D.W. Va. Mar. 26, 2020).

Plaintiff's interactions with Magistrate Gulbronson were solely in his official

capacity as a state magistrate. From the facts asserted in Plaintiff's Complaint,

Magistrate Gulbronson acted within the confines of his judicial position as a state

magistrate. He set a cash bond, signed off on Plaintiff's arrest warrant(s), and presided

over Plaintiff's appearance(s) in state court. As such, Defendant Gulbronson is entitled

to absolute judicial immunity and any claims against him should be dismissed.

#### 2.  Sovereign Immunity

"Because of its jurisdictional nature, a court ought to consider the issue of

Eleventh Amendment immunity at any time, even *sua sponte*." Suarez Corp. Indus. v.

McGraw, 125 F.3d 222, 227 (4th Cir.1997). The Eleventh Amendment provides that the

"Judicial power of the United States shall not be construed to extend to any suit in law

or equity, commenced or prosecuted against one of the ... States" by citizens of another State, U.S. Const. amend. XI, and (as interpreted) by its own citizens. Port. Auth. Trans-Hudson Corp. v. Feeney, 495 U.S. 299, 304 (2009). Thus, by its terms, the Eleventh Amendment bars "any suit in law or equity" brought by individuals against nonconsenting states, regardless of the nature of a claim or the type of relief sought. U.S. Const. amend. XI; see Pennhurst State Sch. v. Halderman, 465 U.S. 89, 100-101 (1984) (finding the nature of the requested relief irrelevant to the sovereign immunity question). The sovereign immunity created by the Eleventh Amendment "protects both the State itself and its agencies, divisions, departments, officials, and other 'arms of the State.'" Hart v. W. Virginia Reg'l Jail Auth., 2012 WL 1155144, at *3 (S.D.W. Va. Mar. 5, 2012) (internal citation omitted).

Defendant West Virginia State Police is a state agency protected from suit in federal court pursuant to the Eleventh Amendment. See Hamstead v. W. Virginia State Police, 2019 WL 12313517, at *3 (N.D.W. Va. Jan. 7, 2019); Scott v. City of Ranson, W.V., 2008 WL 11344674, at *1 (N.D.W. Va. May 20, 2008). Defendant Potomac Highlands Regional Jail is among the several custodial and penal institutions administered by the West Virginia Regional Jail & Correctional Facility Authority ("the Jail Authority"), a state agency. As a state agency, the Jail Authority and its corresponding regional jails are protected from suit in federal court by Eleventh Amendment sovereign immunity. See George v. Kanawha Cnty. Sheriff's Dep't, 2009 WL 367517, at *1 (S.D.W. Va. Feb. 3, 2009); Ballenger v. W. Reg'l Jail, 2018 WL 3190755, at *1 (S.D.W. Va. June 28, 2018); Crawford v. W. Reg'l Jail, 2010 WL 4135203, at *2 (S.D.W. Va. Sept. 22, 2010). Lastly, under the Eleventh Amendment, the

Supreme Court of Appeals of West Virginia is a state entity immune from suit in federal court. Grondin v. Wood Co. Prosecutors Off., 2014 WL 794257, at *7 (S.D.W. Va. Feb. 27, 2014). Mineral County Magistrate Court, which is supervised by the Supreme Court of Appeals of West Virginia,[7] is thus also considered an arm of the State and is likewise immune from suit under the Eleventh Amendment. See Green v. W. Virginia, 2017 WL 6397645, at *5 (S.D.W. Va. Nov. 7, 2017) (holding that the Boone County Circuit Court is an arm of the State of West Virginia and immune from suit in federal court under the Eleventh Amendment because it is supervised by the Supreme Court of Appeals of West Virginia).[8]

However, the Supreme Court has articulated three narrow exceptions to Eleventh Amendment sovereign immunity. Lee-Thomas v. Prince George's Cnty. Pub. Sch., 666 F.3d 244, 248-49 (4th Cir. 2012). First, a state can waive its immunity. Atascadero State Hosp. v. Scanlon, 473 U.S. 234, 238 (1985). Second, Congress may, in particular circumstances, abrogate a state's immunity. See Fitzpatrick v. Bitzer, 427 U.S. 445 (1976); Bd. of Trs. of Univ. of Ala. v. Garrett, 531 U.S. 356, 363 (2001). As to the third and final exception, known as the Ex Parte Young exception, "the Eleventh Amendment permits suits for prospective injunctive relief against state officials acting in violation of federal law." Frew ex rel. Frew v. Hawkins, 540 U.S. 431, 437 (2004) (citing Ex Parte Young, 209 U.S. 123 (1908)).

---

[7] Magistrate Court, https://www.mineralwv.org/magistrate-court/ (last visited Aug. 22, 2022).
[8] West Virginia magistrates are state employees, paid from the State's judicial budget, rather than an employee of the county that elected him/her to office. See Coonts v. Randolph Cnty. Cir. Ct. Judge, 2015 WL 12791398, at *2–3 (N.D.W. Va. Sept. 18, 2015). Because any judgment would be payable out of the treasury of the State of West Virginia, Magistrate Gulbronson should be considered a "state official." Coonts, 2015 WL 12791398, at *2 (citing Hess v. Port Auth. Trans–Hudson, 513 U.S. 30, 48 (1994)). The Eleventh Amendment, therefore, also shields the Mineral County Magistrate in his official capacity from any suit for money damages in federal district court. Coonts, 2015 WL 12791398, at *3.

In the instant case, none of the three sovereign immunity exceptions apply. First, due to an insufficient indication of an express congressional desire to make state governments liable under 42 U.S.C. § 1983, the Supreme Court has held that § 1983 does not abrogate Eleventh Amendment immunity. See Quern v. Jordan, 440 U.S. 332, 340 (1979). Second, to the extent that Plaintiff seeks monetary damages from the State of West Virginia (through its agencies and officials), the Ex Parte Young exception is inapplicable. See Edelman v. Jordan, 415 U.S. 651 (1974) (holding that the Eleventh Amendment prevents a federal court from awarding damages to compensate past injuries when those damages will be paid by the state treasury). Further, the Ex Parte Young exception is also unavailable against the state agency Defendants to the extent Plaintiff seeks any prospective injunctive relief because they are improper parties; Plaintiff would instead need to sue the proper state officials. See McBurney v. Cuccinelli, II, 616 F.3d 393, 399 (4th Cir. 2010) (noting that a state officer must be named under the Ex Parte Young exception and that the officer must have "proximity to and responsibility for the challenged state action" before the exception can be invoked).

Although the state waiver exception requires a more extended analysis, it is similarly unavailable to Plaintiff. The State of West Virginia has waived its sovereign immunity by state statute and consented to suit in *state* court to the extent it has authorized the State Board of Risk and Insurance Management to procure liability insurance providing coverage of all State "property, activities and responsibilities." See W.Va. Code § 29-12-5(a). Thus, the State may be sued in *state* court as long as recovery is sought under and up to the limits of the State's liability insurance coverage. See Arnold Agency v. West Virginia Lottery Com'n, 206 W.Va. 583, 526 S.E.2d 814

15

(1999); <u>Parkulo v. West Virginia Bd. of Probation and Parole</u>, 199 W.Va. 161, 483

S.E.2d 507 (1997); <u>Pittsburgh Elevator Co. v. West Virginia Bd. of Regents</u>, 172 W.Va.

743, 310 S.E.2d 675 (1983).

   Here, however, Plaintiff has sued arms of the State of West Virginia in *federal*

court where the State has not consented to be sued. <u>See</u> <u>Price v. W. Virginia Air Nat'l</u>

<u>Guard</u>, <u>130TH Airlift Wing</u>, 2016 WL 3094010, at *2–3 (S.D.W. Va. June 1, 2016)

(holding that insurance provisions contained in the West Virginia Code provide a limited

waiver of the State's sovereign immunity in state courts; however, that waiver does not

extend to suits brought against the State in federal court). Further, Plaintiff has failed to

make any showing that the West Virginia State Police, Potomac Highlands Regional

Jail, or Mineral County Magistrate Court otherwise waived sovereign immunity by

consenting to suit in federal court. Thus, the waiver exception does not apply, and the

immunity provided by the Eleventh Amendment remains intact as a bar to suing entities

of the State in federal court. Accordingly, Plaintiff's claims against Defendants West

Virginia State Police, Potomac Highlands Regional Jail, and Mineral County Magistrate

Court should be DISMISSED, as these Defendants are immune from suit.

   **C.**  **Failure to State a Claim**

   In addition to the recommendations set forth above, the undersigned will now

address Plaintiff's failure to state a claim upon which relief can be granted. Plaintiff's

Complaint characteristically fails to include sufficient facts to state any plausible claim

against any Defendant. The undersigned has carefully parsed through the Plaintiff's

multiple, repetitive, and at times irrelevant filings and summarizes Plaintiff's allegations

and claims below. Although Plaintiff is given the benefit of liberal construction, the

undersigned finds that the Complaint (and claims in related filings), as currently written, is without foundation in fact and does not set forth cognizable claims at law.

### 1. Federal Criminal Statutes

Plaintiff attempts to bring civil claims under federal criminal statutes, specifically, 18 U.S.C. §§ 241-242 (conspiracy to commit color of law violations) and 18 U.S.C. § 1512 (intimidation of a federal witness). These federal criminal statutes do not provide for a private right of action and any such claims should be dismissed from the Complaint.

The fact that "a federal statute has been violated and some person harmed does not automatically give rise to a private cause of action in favor of that person." Cannon v. Univ. of Chi., 441 U.S. 677, 688 (1979). Federal private rights of action, like substantive federal law, "must be created by Congress." Alexander v. Sandoval, 532 U.S. 275, 286 (2001). "To create a private right of action, Congress must 'speak with a clear voice' and the statute must 'unambiguously' express the intent 'to create not just a private right but also a private remedy." Clear Sky Car Wash LLC v. City of Chesapeake, 743 F.3d 438, 444 (4th Cir. 2014) (internal citation omitted). Where "Congress is silent or ambiguous, courts may not find a cause of action." Planned Parenthood S. Atlantic v. Baker, 941 F.3d 687, 695 (4th Cir. 2019). This holds true for federal criminal statutes. See Fed Sav. & Loan Ins. Co. v. Reeves, 816 F.2d 130, 138 (4th Cir. 1987); accord Tam Anh Pahm v. Deutsche Bank Nat. Trust Co., 583 F. App'x 216, 217 (4th Cir. 2014).

The criminal statutes cited by Plaintiff do not provide him with either a private right or remedy. To the contrary, these provisions are "bare criminal statute[s], with

absolutely no indication that civil enforcement of any kind [i]s available to anyone." <u>Cort</u> <u>v. Ash</u>, 422 U.S. 66, 80 (1975). Courts in this Circuit have reached the same conclusion about the criminal statutes cited in this case. <u>See</u> <u>Capps v. Oconee Cnty. Sheriff's Off.</u>, 2018 WL 10035800, at *3 (D.S.C. June 22, 2018) (recommending dismissal of claims arising under 18 U.S.C. §§ 241 and 242 because they are criminal statutes that do not provide a right of civil action); <u>Ogunsula v. Holder</u>, 2015 WL 3892126, at *3 (D. Md. June 22, 2015) (holding that 18 U.S.C. § 1512, which is a criminal statute prohibiting witness tampering, does not establish a right to bring a civil cause of action). Thus, Plaintiff may not assert private rights of action based on alleged violations of these criminal statutes and any such claims should be dismissed for failure to state a claim upon which relief may be granted.

### 2. Bivens Claims

Plaintiff has failed to state a <u>Bivens</u> claim. <u>Bivens</u> claims are only cognizable against federal officials in their individual capacities. <u>Vinson v. F.B.I.</u>, 2003 WL 23712096, at *1 (W.D. Va. Feb. 25, 2003). None of the Defendants in this case are federal officials. Thus, any attempted <u>Bivens</u> claims should be dismissed for failure to state a claim upon which relief can be granted.

### 3. Section 1983 Claims

Plaintiff has failed to state a § 1983 claim against any Defendant. In order to state a claim under 42 U.S.C. § 1983, the plaintiff must demonstrate that (1) a person (2) acting under color of state law (3) deprived him of rights guaranteed by the Constitution or federal law. <u>Dowe v. Total Action Against Poverty in Roanoke Valley</u>, 145 F.3d 653, 658 (4th Cir. 1998). To be sued under § 1983, a defendant "must either

be a state actor or have a sufficiently close relationship with state actors that a court would conclude that [it] is engaged in the state's actions." Cox v. Duke Energy Inc., 876 F.3d 625, 632 (4th Cir. 2017) (internal quotations omitted).

In addition to the Defendants immune from suit (West Virginia State Police, Potomac Highlands Regional Jail, Mineral County Magistrate Court, and Magistrate Gulbronson), Plaintiff has also failed to state a plausible § 1983 claim against Troopers Hartman, Trenton, and Kerns. Plaintiff alleges general constitutional violations perpetrated by the Defendants. Specifically, Plaintiff seems to allege violations of the Fourth Amendment (False Arrest/Imprisonment and Malicious Prosecution), the First Amendment, the Fifth Amendment Due Process Clause, and the Fourteenth Amendment Due Process and Equal Protection Clauses. However, Plaintiff often fails to describe with clarity which Defendants were responsible for each of the respective violations. Furthermore, the Complaint largely provides only labels and conclusions bereft of any factual allegations supporting a reasonable inference that any Defendant is liable for the conduct alleged. See Twombly, 550 U.S. at 555.

i.   Fourth Amendment Claims

Plaintiff alleges that his Fourth Amendment rights were violated because he was falsely arrested/imprisoned and maliciously prosecuted. Actions under § 1983 based upon claims of false arrest or false imprisonment and malicious prosecution are properly analyzed as unreasonable seizures under the Fourth Amendment which also incorporate certain elements of their common law tort counterparts. McPhearson v. Anderson, 873 F. Supp. 2d 753, 756 (E.D. Va. 2012); see also Rogers v. Pendleton,

249 F.3d 279, 294 (4th Cir.2001); Lambert v. Williams, 223 F.3d 257, 261 (4th Cir. 2000).

The Fourth Amendment establishes a ban on unreasonable seizures. U.S. Const. amend. IV. And "this uniform ban bars all pretrial detentions without probable cause to believe that a detainee has committed a crime—whether or not the detention comes before or after formal 'legal process.'" Dibrell v. City of Knoxville, Tennessee, 984 F.3d 1156, 1161 (6th Cir. 2021) (internal citations omitted). The overlapping § 1983 claims of false arrest and false imprisonment address detentions that occur before "legal process." Wallace v. Kato, 549 U.S. 384, 388-390 (2007). The claim of malicious prosecution, by contrast, applies to any detention after the "wrongful institution of legal process." Id. at 390. An arrest warrant, indictment, or arraignment all initiate "legal process." Dibrell, 984 F.3d at 1161; Wallace, 549 U.S. at 388-390. Meaning, if a state magistrate issues an arrest warrant resulting in an arrest and detention, the only available claim in this scenario is that of malicious prosecution.

In other words, if an arrest warrant has been obtained prior to the arrest, Plaintiff cannot bring a claim for false arrest or false imprisonment. See Porterfield v. Lott, 156 F.3d 563, 568 (4th Cir. 1998). In Porterfield, the Fourth Circuit held that a law enforcement officer cannot commit the tort of false arrest when he is acting pursuant to a facially valid arrest warrant. Id. "At most, such an official can be pursued through a cause of action for malicious prosecution." Id.

Since Defendant Troopers obtained valid arrest warrants from a magistrate for Plaintiff's failure to appear in state court prior to his arrest and detention, Plaintiff's false arrest and imprisonment claims must fail and should be dismissed against all

Defendants. See also Adams v. Parsons, 2011 WL 1464856, at *4 (S.D.W. Va. Apr. 15, 2011) (holding that Plaintiff's claims for false arrest and false imprisonment fail as a matter of law because he was arrested pursuant to a facially valid warrant). To the extent that Plaintiff contends that his arrest and detention were unsupported by probable cause, his allegations "must be relevant only to his claim for malicious prosecution." Porterfield, 156 F.3d at 568. The undersigned accordingly proceeds to consider Plaintiff's claim against Defendants for malicious prosecution.

To state a malicious prosecution claim under § 1983, "a plaintiff must allege that the defendant (1) caused (2) a seizure of the plaintiff pursuant to legal process unsupported by probable cause, and (3) criminal proceedings terminated in plaintiff's favor." Evans v. Chalmers, 703 F.3d 636, 647 (4th Cir. 2012). Here, Plaintiff cannot demonstrate a claim of malicious prosecution under § 1983 because he failed to allege that the criminal proceedings were terminated in his favor. It appears to the Court that the criminal charges against Plaintiff forming the basis of the instant civil action are still pending. Given that the underlying state criminal proceeding has not terminated in Plaintiff's favor, he is precluded from bringing a § 1983 action for malicious prosecution. The undersigned therefore finds that the Complaint fails to state a claim for malicious prosecution and recommends dismissal of Plaintiff's Fourth Amendment claims of false arrest, false imprisonment, and malicious prosecution.

ii.   First Amendment Claim

Plaintiff briefly mentioned a potential violation of the First Amendment and federal "whistleblowing laws," without providing supporting facts. See ECF No. 1 at 1, 4. The

21

undersigned finds that this vague legal conclusion fails to state a claim upon which relief can be granted.

### iii.   Fifth Amendment Claim

Fifth Amendment claims under § 1983 are limited to the enforcement of the takings clause, Knick v. Township of Scott, 139 S. Ct. 2162 (2019), and a criminal defendant's right to be free from self-incrimination, Chavez v. Martinez, 538 U.S. 760 (2003). See Reid v. Sandy, 2022 WL 898720, at *6 (N.D.W. Va. Mar. 28, 2022). As it pertains to the right to due process, the Fifth Amendment's Due Process Clause only applies to the federal government. Id. Plaintiff has not brought suit against the federal government. Because § 1983 only permits claims against state actors, the Fifth Amendment is not the proper constitutional vehicle to assert due process violations in this case. Id. As such, any alleged Fifth Amendment due process claim should be dismissed. The Fourteenth Amendment's Due Process Clause, on the other hand, applies to state and local governments. Id. Accordingly, the Court will construe any allegations of due process violations as Fourteenth Amendment claims.

### iv.   Fourteenth Amendment Claims

Plaintiff also alleges violations of the Fourteenth Amendment Due Process and Equal Protection Clauses. The Fourteenth Amendment's Due Process Clause prohibits deprivation of "life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. To state a substantive due process claim, a plaintiff must allege: (1) that he has been deprived of "interests encompassed by the Fourteenth Amendment's protection of liberty and property," Bd. of Regents v. Roth, 408 U.S. 564, 569 (1972); and (2) that the deprivation was by some form of state action, Am. Mfrs. Mut. Ins. Co. v.

<u>Sullivan</u>, 526 U.S. 40, 49–50 (1999). Further, a plaintiff must also show that the state's action is so arbitrary and egregious that it "shocks the conscience." <u>Cnty. of Sacramento v. Lewis</u>, 523 U.S. 833, 846 (1998).

After reviewing the Complaint, the undersigned cannot find any facts to plausibly support a due process violation under § 1983. First, Plaintiff alleges that instead of organizing an initial appearance by video on the evening of his arrest on July 1, "the Mineral County Magistrate's Office maliciously left the Plaintiff in jail for several days to effect a punishment without Due Process." ECF No. 1 at 5. Defendant Mineral County Magistrate Court is not a "person" subject to liability under § 1983. <u>See</u> <u>Redman v. Jackson Cnty. Magistrate Ct.</u>, 2011 WL 6372339, at *1 (S.D.W. Va. Dec. 20, 2011) (holding that "Plaintiff cannot state a claim against the Jackson County Magistrate Court because that party is not a "person" subject to liability under § 1983"). Furthermore, Plaintiff admits to meeting with a magistrate from Grant County on July 1, 2022, after his arrest. <u>See</u> ECF No. 1 at 5. Then, within three business days, on July 6, 2022, Plaintiff presumably had his detention/bond hearing, where he was released from jail on a $5,000 cash bond. ECF No. 1 at 6-7. The undersigned finds no due process violation under these facts. Next, Plaintiff alleges that he was "forced" to have his elderly parents pick him up from Virginia and pay a $5,000 cash bond, which Plaintiff contends is a punishment without due process in violation of the Fourteenth Amendment. ECF No. 1 at 6. Being released from jail on a $5,000 cash bond to assure future court appearances is not a due process violation, and certainly does not represent state action that was so arbitrary and egregious that it "shocks the conscience." In sum, the undersigned finds

that Plaintiff has not been deprived of an interest recognized by the Fourteenth Amendment Due Process Clause.

The Fourteenth Amendment's Equal Protection Clause provides that "[n]o State shall ... deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. To state a claim for an equal protection violation, a § 1983 plaintiff must allege facts which plausibly show that the state actor defendants treated the plaintiff differently from others with whom he was similarly situated and that the unequal treatment was the result of intentional or purposeful discrimination. Fauconier v. Clarke, 966 F.3d 265, 277 (4th Cir. 2020).

Plaintiff's equal protection allegations are as follows:

In jail, a Grant County Sheriff's Deputy said to the Plaintiff: "I know you. You're the Sovereign Citizen!" Treatment of the Plaintiff was a violation of the equal protection clause of the Fourteenth Amendment. The Plaintiff is persecuted politically due to his knowledge of the Constitution, love of Freedom and Liberty, and predisposition to defend his Constitutional Rights in an area known for excessive alcohol consumption, drug use, and willfully ignorant local enforcement officials who despise the Constitution, which is The Law. The utter contempt West Virginia police officers have for Libertarians is a violation of the Bivens Act when it manifests into unequal treatment under the equal protection clause of the Fourteenth Amendment.

ECF No. 1 at 5.

Plaintiff fails to identify which specific state actor Defendants are responsible for any alleged equal protection violations, fails to state how he was treated differently from others with whom he was similarly situated, and fails to state that any alleged unequal treatment was motivated by discriminatory animus. Plaintiff's Complaint does not give rise to a plausible equal protection claim and should be dismissed. See Evans v. Griess, 2013 WL 5817239, at *8 (E.D.N.C. Oct. 23, 2013) (recommending dismissal of a plaintiff's equal protection claims where the plaintiff's allegations were comprised almost

24

entirely of conclusory allegations unsupported by concrete facts, and the plaintiff failed to articulate how the treatment of him was different from others).

Because Plaintiff has failed to state a claim upon which relief can be granted, his § 1983 claims should be DISMISSED without prejudice against all Defendants. See 28 U.S.C. § 1915(e)(2)(B)(ii).

### 4. State Law Claims

Finally, to the extent Plaintiff attempts to assert any claims sounding in state common law, the Court lacks § 1332 diversity jurisdiction over these claims. The Court has diversity jurisdiction under 28 U.S.C. § 1332(a) so long as no defendant is a citizen of the same state as the plaintiff and the amount in controversy exceeds $75,000. Plaintiff is a citizen of West Virginia. See ECF No. 1 at 1; ECF No. 8 at 1; ECF No. 8-1 at 1. Defendants all appear to be citizens of West Virginia. See ECF No. 1-3 at 1-7; ECF No. 8-1 at 2-6. Because the Court lacks complete diversity of citizenship between the parties, it is divested of § 1332 jurisdiction over Plaintiff's state law claims. Thus, Plaintiff's federal claims are the sole source of this Court's original jurisdiction under 28 U.S.C. § 1331. As the undersigned has recommended the dismissal of Plaintiff's federal claims against all Defendants, the undersigned also recommends that the Court, in its discretion, decline to exercise supplemental jurisdiction over any of Plaintiff's alleged state law claims. See 28 U.S.C. § 1367(c)(3).

### D. Injunctive Relief

In addition to his Complaint, Plaintiff also filed motions for injunctive relief that reiterate the same facts and legal conclusions presented in the Complaint. See ECF Nos. 3, 5, 8. Plaintiff demands injunctive relief against "the Defendants, any magistrate

25

office in any county of the state of West Virginia, any West Virginia Patrol Officer, any other police or Sheriff's officer of any department of any enforcement institution in the state of West Virginia, and any law enforcement officer in any other state who might pull over Plaintiff and see fraudulent charges placed on the Plaintiff's record by the Defendant(s)." ECF No. 3. As to the specific injunctive relief requested, Plaintiff seeks the following: (1) that no warrants be issued without proof of an actual crime; (2) absolutely no contact from any law enforcement officer without the Plaintiff having committed a crime; and (3) refrain from prosecuting Plaintiff in state court. ECF Nos. 3, 5. Plaintiff claims that he "requires immediate injunctive relief against the Defendants to keep [him] from being unlawfully arrested and unlawfully incarcerated." ECF No. 8.

Federal Rule of Civil Procedure 65 authorizes federal courts to issue temporary restraining orders or preliminary injunctions. The standard for granting both is the same. Moore v. Kempthorne, 464 F. Supp. 2d 519, 525 (E.D. Va. 2006) (internal citations omitted); U.S. Dep't of Labor v. Wolf Run Mining Co., 452 F.3d 275, 281 n.1 (4th Cir. 2006) (noting that a temporary restraining order is distinguishable from a preliminary injunction only in duration). Both are "extraordinary remedies involving the exercise of a very far-reaching power to be granted only sparingly and in limited circumstances." MicroStrategy Inc. v. Motorola, 245 F.3d 335, 339 (4th Cir. 2001) (internal quotations omitted). The party seeking the preliminary injunction or temporary restraining order must demonstrate that: (1) he is likely to succeed on the merits of the case; (2) he is likely to suffer irreparable harm in the absence of injunctive relief; (3) the balance of the equities tips in his favor; and (4) an injunction would be in the public interest. Winter v. Nat. Res. Def. Council, Inc., 555 U.S. 7, 20 (2008).

26

The undersigned finds that Plaintiff has failed to make the requisite showing under any of the four requirements necessary for this Court to provide temporary injunctive relief. Considering the undersigned has recommended the dismissal of all claims asserted in the Complaint, which bears the same factual basis as these Motions, the undersigned finds that Plaintiff is unlikely to succeed on the merits of the case. Accordingly, Plaintiff's Motion [ECF No. 3] for Injunction, Motion [ECF No. 5] for a Cease-and-Desist Order, and Emergency Request for Injunction [ECF No. 8] should be denied.

### E.     Prefiling Sanctions Notice

Plaintiff has sought *in forma pauperis* status, or put another way, has requested a waiver of the court filing fees, in all seven of the cases he has filed in federal court. The purpose of the "federal *in forma pauperis* statute . . . is designed to ensure that indigent litigants have meaningful access to the federal courts." Neitzke, 490 U.S. at 324. But in eliminating the requirement for paying costs, the *in forma pauperis* statute "removed 'any economic incentive to refrain from filing frivolous, malicious, or repetitive lawsuits,' and thus carried the potential to overburden the judicial system with patently meritless lawsuits." Eriline Co. S.A. v. Johnson, 440 F.3d 648, 656 (4th Cir. 2006) (internal citations omitted).

As they are matters of public record, the undersigned takes judicial notice that several federal district courts have dismissed actions filed by Mr. Strasburg. Plaintiff has overburdened the judicial system with patently meritless lawsuits and frivolous notices of removal, all with similarly repetitive procedural flaws and claims. Mr. Strasburg should take notice that he is on the brink of abusing the *in forma pauperis* privilege.

27

In <u>Strasburg v. Hardy County, West Virginia</u>, No. 2:22-cv-6-TSK-MJA (N.D.W. Va. May 31, 2022), Magistrate Judge Michael J. Aloi recommended the dismissal of Strasburg's complaint for failure to state a claim and the denial of Strasburg's motion to remove state criminal proceedings to federal court, just as the undersigned has recommended here. Plaintiff's five other federal court cases have all been dismissed under similar circumstances. <u>See</u> <u>Strasburg v. Virginia</u>, No. 1:20-cv-242-LO-TCB (E.D. Va. Aug. 20, 2020) (dismissing Strasburg's complaint for failure to state a claim); <u>Strasburg v. Maryland</u>, No. 8:20-cv-3335-PWG (D. Md. Nov. 23, 2020) (denying removal motion of state court action related to traffic violations, remanding action to state court, and dismissing complaint to the extent that the Strasburg's filings can be construed as a separate action apart from his traffic tickets); <u>Kentucky v. Strasburg</u>, No. 0:20-CV-140-GFVT, 2020 WL 6937439 (E.D. Ky. Nov. 24, 2020) (denying removal motion of state criminal matter, remanding action to state court, and dismissing case); <u>Virginia v. Strasburg</u>, No. 1:20-cv-923-RDA-JFA (E.D. Va. March 4, 2021) (remanding action to state court because Strasburg failed to comply with the procedural requirements of removal); <u>Strasburg v. Wilson</u>, No. 1:22-cv-1570-SAG (D. Md. August 15, 2022) (denying motion to remove state criminal matter to federal court, remanding action to state court, and dismissing complaint).

Plaintiff should be aware of the future possibility of sanctions that could be imposed on him as a vexatious litigant, which would prohibit him from proceeding *in forma pauperis* in any future cases in this District except as provided by the Court. Perhaps if Plaintiff is forced to pay the court costs associated with the commencement of any future civil action, he may think twice before repeating the same sort of

28

unsuccessful claims and frivolous removal arguments consistently rejected by this and other district courts.

## V.   RECOMMENDATION

For the foregoing reasons, the undersigned finds that Plaintiff's Complaint fails to state a claim upon which relief can be granted and seeks monetary relief against defendants who are immune from such relief. Accordingly, the undersigned **RECOMMENDS** that Plaintiff's Complaint [ECF No. 1] be **DISMISSED WITHOUT PREJUDICE** and Plaintiff's related Motions [ECF Nos. 2, 3, 4, 5, 8, 10] be **DENIED**. The undersigned further **RECOMMENDS** that the state criminal matter of State v. William Joseph Strasburg, No. 22-M29M-390, be **REMANDED** to the Magistrate Court of Mineral County, West Virginia, and that the state criminal matter of State v. William Joseph Strasburg, No. 22-M12M-645, be **REMANDED** to the Magistrate Court of Grant County, West Virginia.

Any party may, within fourteen (14) days after being served with a copy of this Report and Recommendation, file with the Clerk of this Court, **specific written objections, identifying the portions of the Report and Recommendation to which objection is made, and the basis of such objection**. A copy of such objections should also be submitted to the Honorable GINA M. GROH, United States District Judge. **Failure to file written objections as set forth above shall constitute a waiver of de novo review by the District Court and a waiver of appellate review by the Circuit Court of Appeals**. See 28 U.S.C. § 636(b)(1); Wright v. Collins, 766 F.2d 841, 845–48 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984); see also Thomas v. Arn, 474 U.S. 140, 155 (1985).

The Court directs the Clerk of the Court to mail a copy of this Report and Recommendation to the pro se Plaintiff by certified mail, return receipt requested, to his last known address as reflected on the docket sheet and to counsel of record, if any, as provided in the Administrative Procedures for Electronic Case Filing in the United States District Court for the Northern District of West Virginia.

Further, because this Report and Recommendation completes the referral from the District Court, the Clerk is directed to terminate the Magistrate Judge association with this case.

DATED: August 24, 2022

ROBERT W. TRUMBLE
UNITED STATES MAGISTRATE JUDGE